IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Sandra M. Holliday, | ) | C/A No. 6:24-cv-05122-BHH-KFM |
| | ) | |
| Plaintiff, | ) | **REPORT OF MAGISTRATE JUDGE** |
| | ) | |
| vs. | ) | |
| | ) | |
| Pratt Industries, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

This is a civil action filed by a *pro se* and *in forma pauperis* plaintiff. Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in this case and submit findings and recommendations to the district court.

By order filed January 2, 2025, the undersigned authorized service of the plaintiff's Title VII retaliation and failure to promote claims (doc. 26). That same day, the undersigned issued a report and recommendation recommending that the plaintiff's remaining claims be dismissed (doc. 28). Based on additional documents and allegations submitted with the plaintiff's objections, on April 8, 2025, the Honorable Bruce Howe Hendricks, United States District Judge, recommitted initial review of the plaintiff's claims to the undersigned (doc. 89). Based on Judge Hendricks' order, the undersigned instructed the plaintiff to submit a third amended complaint containing all of her claims and allegations (doc. 94). On April 25, 2025, the plaintiff's third amended complaint was entered on the docket (doc. 104). Having reviewed the plaintiff's third amended complaint, the undersigned is of the opinion that two claims are sufficient to survive screening (as outlined specifically below), and service will be recommended as to those claims. However, the remainder of

the plaintiff's claims in the third amended complaint fail to state a claim upon which relief may be granted; thus, they are subject to summary dismissal.

## ALLEGATIONS

The plaintiff alleges employment discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981, and under South Carolina law (doc. 104). The plaintiff contends that she has revised her allegations in the third amended complaint to encompass all allegations in compliance with this court's order (*id*. at 8–9). The plaintiff alleges unlawful termination, failure to promote, unequal terms and conditions of employment, and retaliation based on her sex (female) and race (African American) (*id*. at 4, 8). The plaintiff contends that she worked with the defendant as a Shipping Leadman from October 2018 to February 2024 (*id*. at 5). During this time, the plaintiff alleges she was denied promotions and compensation opportunities in favor of Caucasian male employees, including for the Shipping Manager position in April 2023 (*id*. at 5, 32). The plaintiff alleges that she applied for a Shipping Manager position and that a Caucasian male was given the role even though she had a Master's degree to his Associate's degree and had more years of experience (*id*.). The plaintiff contends that after her termination another Caucasian male was promoted to the role of Shipping Supervisor (*id*.).

The plaintiff also alleges disparate treatment because she was terminated for abrasive language, inappropriate behavior, and failing to follow her supervisor's instructions whereas Caucasian male employees were not terminated for committing what the plaintiff alleges were more "egregious offenses" (*id*. at 12–14). The plaintiff contends that a Caucasian male comparator, Mr. Lollis, was not fired after being caught drinking on the job and that after Mr. Lollis was terminated for a safety violation involving a forklift he was rehired to Shipping Manager (*id*. at 13, 15). The plaintiff also contends that Mr. Lollis was promoted to Shipping Manager in 2019 over an existing Shipping Supervisor named "Buddy" (*id*. at 13). The plaintiff also alleges that Mr. Jones, another Caucasian male comparator,

was promoted to the plaintiff's position after her termination and that he was not required to do additional physical labor while in the position of production supervisor (*id*.). The plaintiff also contends that the disparate treatment can be presumed because Jeff Fullwood got defensive with the plaintiff at some point when she asked if Mr. Jones was required to do physical tasks like she was required to do (*id*.). The plaintiff contends that when she was waiting for a single kit for shipment, other employees were "horseplaying" and using personal phones instead of working, but Mr. Jones (who was their supervisor) was not disciplined (*id*. at 14). The plaintiff contends that she was disciplined "dealing with the consequences" (*id*.). The plaintiff contends that her comparators were under the same facility management and human resources policies and they were treated more favorably than she was based on race and gender because she was referred to as a "distraction" (*id*.). The plaintiff also contends that the defendant improperly retained employees that discriminated against her (*id*. at 24, 25).

The plaintiff contends that she was also subjected to a hostile work environment because of her gender and race because of comments about the plaintiff made by Roger Taylor (a Caucasian male operations manager) that were shared with the plaintiff by a third party (*id*. at 5, 16–18, 22). The plaintiff alleges that she complained about the conduct, but there was no response (*id*.). The plaintiff also contends that she was the only African American female in leadership and that she was excluded from chain-of-command emails, other managers circumvented her by speaking with other individuals in management, and the plaintiff had no formal oversight of the department (*id*. at 16, 18, 23). The plaintiff also contends that she was not included in a disciplinary meeting for one of her own employees, which marginalized her authority (*id*.). The plaintiff also contends that she was subjected to a hostile work environment because Mr. Fullwood got defensive about the plaintiff questioning whether Mr. Jones was required to engage in physical tasks the plaintiff

3

was usually required to do (*id*. at 17–18).  The plaintiff contends that she was then improperly labeled as disruptive and a distraction after her termination (*id*.).

In January 2024, the plaintiff complained about discrimination and the unsafe working conditions that resulted in the plaintiff sustaining a workplace injury (and her workers' compensation claim remains unresolved) (*id*. at 5).  The plaintiff alleges that the defendant inaccurately addressed her workplace injury claims and denied the plaintiff medical treatment after her workplace injury (*id*.).  The plaintiff contends that on February 14, 2024, she informed the human resources manager that she was going to file a complaint with the Equal Employment Opportunity Commission ("EEOC") regarding discrimination she experienced while working for the defendant (*id*. at 5, 10, 15, 31).  That same day, the plaintiff contends that she received a final written warning for her first disciplinary action (*id*. at 10, 15, 26).

The plaintiff contends that on February 26, 2024, she informed management that an email policy sent by Kyle Stafford was unlawful and although Roger Taylor initially agreed with the plaintiff's assertion that the policy was unlawful, she was later told that it was a lawful directive (*id*. at 10, 15, 20–21, 26–27, 31).  The plaintiff contends that being terminated after challenging the alleged illegal policy in the email from Mr. Stafford violated public policy under South Carolina law (*id*. at 19).  The plaintiff contends that changing the shipping date – as directed by Mr. Stafford – violated federal criminal law (18 U.S.C. § 1001) and federal regulations (49 C.F.R. §§ 373.101(c), 395.8(e)) (*id*. at 19, 20–21).  The plaintiff contends that she was then retaliated against because she was terminated on February 27, 2024, and referred to as a distraction (*id*. at 5, 10–11, 15–16, 20–21, 26–27, 30–31).

The plaintiff also alleges defamation because her professional reputation was harmed when she was referred to in internal emails as a "distraction" and a "disgruntled employee" (*id*. at 28).  The plaintiff contends that the discriminatory conduct and being

labeled a distraction were extreme conduct causing her to suffer emotional distress (*id*. at 29–30).

The plaintiff's first cause of action is retaliation for reporting unsafe working conditions, unlawful directives, and that she would submit an EEOC complaint about unlawful workplace discrimination (*id*. at 9–11). The plaintiff's second cause of action is for disparate treatment (*id*. at 12–14). The plaintiff's third cause of action is retaliation – based on the same events described in her prior retaliation claim (*id*. at 14–16). The plaintiff's fourth cause of action is hostile work environment (*id*. at 16–18). The plaintiff's fifth cause of action is unlawful termination under South Carolina state law (*id*. at 18–20). The plaintiff's sixth cause of action is retaliation for refusing to falsify shipping records (*id*. at 20–21). The plaintiff's seventh cause of action is failure to investigate or prevent discrimination (*id*. at 21–24). The plaintiff's eighth cause of action is negligent supervision and retention under South Carolina law (*id*. at 24–26). The plaintiff's ninth cause of action is a "coordinated campaign" of retaliation – based on the same allegations as her other retaliation claims (*id*. at 26–27). The plaintiff's tenth cause of action is defamation under South Carolina law (*id*. at 27–28). The plaintiff's eleventh cause of action is intentional infliction of emotional distress ("IIED") under South Carolina law (*id*. at 29–30). The plaintiff's twelfth cause of action is retaliation – based on the same allegations as her other retaliation claims (*id*. at 30–31). The plaintiff's thirteenth cause of action is failure to promote based on her race and gender (*id*. at 32).

The plaintiff contends that she filed a complaint with the EEOC on October 7, 2023, and received a notice of right to sue on June 27, 2024 (*id*. at 5). For relief, the plaintiff seeks money damages and various forms of injunctive relief (*id*. at 6, 33–34).

## STANDARD OF REVIEW

The plaintiff filed this action pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute. This statute authorizes the District Court to dismiss a case if it is satisfied

5

that the action "fails to state a claim on which relief may be granted," is "frivolous or malicious," or "seeks monetary relief against a Defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). As a *pro se* litigant, the plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys. *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

## DISCUSSION

As noted above, the plaintiff filed the instant action seeking damages and injunctive relief from the defendant. As an initial matter, to the extent the plaintiff's third amended complaint references documents previously submitted to the court as part of her objections to a prior report and recommendation issued by the undersigned, such a reference is improper and those documents are not considered as part of the plaintiff's allegations (*see* doc. 104). As the plaintiff was warned (and she concedes in her third amended complaint (*see* doc. 104 at 9)) the third amended complaint was a replacement for prior pleadings and should be "complete in itself" (doc. 94 at 2 (internal citation omitted)). As such, because the plaintiff was warned that her third amended complaint must include all of the allegations she seeks to present in this action, the plaintiff may not reference various documents previously submitted to this court to shore up otherwise deficient claims in her third amended complaint. Additionally, the court is not required to rummage through various voluminous documents submitted by the plaintiff to find and/or support an otherwise deficient claim. *See Weller*, 901 F.2d at 391 (noting that the Court is not required to ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court). Accordingly, the claims evaluated in the plaintiff's third amended complaint are based on the allegations contained therein *only*.

6

Having reviewed the plaintiff's third amended complaint, the undersigned is of the opinion that the plaintiff's failure to promote and retaliation claims (brought pursuant to Title VII) are sufficient to survive screening, and service will be recommended as to those two claims. Of note, the plaintiff's lengthy third amended complaint purports to assert various claims based on similar allegations that are repeated several times (*see* doc. 104). Due to this, the undersigned specifically notes that there are two discrete claims that are recommended for service – and the plaintiff's remaining claims (including her various repetitive allegations) are subject to dismissal. The failure to promote claim being served is in reference to the Shipping Manager position for which the plaintiff was not hired in April 2023, *only* – and any other potential failure to promote claim is recommended for dismissal and addressed *infra*. Further, the retaliation claim that is recommended for service is with respect to the plaintiff's complaint in February 2024 of gender and race discrimination and her subsequent termination, *only* – and any other retaliation claim is subject to dismissal as outlined below.

**Section 1981 Claims**

As noted, the plaintiff alleges discrimination and retaliation pursuant to 42 U.S.C. § 1981 (*see* doc. 104). Section 1981 prohibits "discrimination in employment on the basis of race" and also prohibits retaliation on the basis of race. 42 U.S.C. § 1981; *CBOCS W., Inc. v. Humphries*, 553 U.S. 442 (2008)*; Yashenko v. Harrah's N.C. Casino Co., LLC*, 446 F.3d 541, 551–52 (4th Cir. 2006). Section 1981, however, requires but-for causation – that he/she would not have suffered discrimination/retaliation *but for* his/her race. *Comcast v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 340–41 (2020). Here, the plaintiff has failed to allege that but-for her race, the defendant would not have terminated her or retaliated against her for purposes of her § 1981 claim. *Id*. at 340. For example, although the plaintiff attempted to separately address her § 1981 claims in her third amended complaint; her claims are all based on her assertion that she was discriminated

7

against based on **both** her race and her gender (*see* doc. 104). Further, the plaintiff's retaliation claim is based on her complaints to management that she would file an EEOC complaint regarding race and gender discrimination and unsafe working conditions – meaning that her retaliation claim also fails under § 1981 because she has not alleged that race was a but-for cause of the retaliation. *Comcast*, 589 U.S. at 333. Accordingly, the plaintiff's § 1981 claims are subject to summary dismissal.

**Title VII Claims**

Title VII makes it "an unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e–2(a)(1). Here, the plaintiff alleges both race (African American) and gender (female) discrimination claims based on failure to promote, hostile work environment, unequal terms and conditions of employment, and retaliation. As noted above, the plaintiff's failure to promote and retaliation claims brought pursuant to Title VII are sufficient to survive screening and service will be recommended on those claims *only* – as to the specific claims outlined above. The plaintiff's remaining Title VII claims, which are recommended for dismissal, will be addressed in turn.

As an initial matter, the plaintiff alleges a failure to investigate claim as her seventh cause of action (doc. 104 at 21–24). There is no standalone claim for a failure to investigate under Title VII; instead, the cases cited by the plaintiff address meeting elements of a hostile work environment claim (including a basis for imposing liability for the harassing conduct on the employer). *See E.E.O.C. v. Xerxes Corp.*, 639 F.3d 658, 669 (4th Cir. 2011); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333–34 (4th Cir. 2003). As outlined in more detail below, the plaintiff's hostile work environment claim is subject to dismissal for failure to allege a severe or pervasive work environment – not based on a failure to allege

8

imputation of the conduct to the employer as addressed in the cases cited by the plaintiff. Accordingly, the plaintiff's hostile work environment claim is addressed in more detail below, and any alleged stand alone claim for failure to investigate is subject to dismissal.

Additionally, although the plaintiff checked a box on her third amended complaint that she was unlawfully terminated, the only allegations in the third amended complaint about an unlawful termination are related to her retaliation claim (that she was unlawfully terminated in retaliation for making workplace complaints) (*see* doc. 104 at 4, 5, 9–11, 14–16, 20–21, 26–27, 30–31). As such, the plaintiff has not raised an independent claim for unlawful termination in her third amended complaint – thus, any such claim would be subject to dismissal and the plaintiff's termination will be evaluated as part of her Title VII retaliation claim.

### Hostile Work Environment Claim

The plaintiff alleges that she was subjected to a hostile work environment because she was discriminated against on the basis of her race and gender, as well as that a Caucasian male operations manager (Roger Taylor) made a discriminatory remark about her, she was the only African American female in leadership but she was excluded from chain-of command emails, other managers circumvented her, she had no formal oversight of her department, she was excluded from a disciplinary meeting involving one of her employees, Mr. Fullwood got defensive when the plaintiff questioned him about Mr. Jones not engaging in physical tasks in the way the plaintiff did, and that she was labeled as a distraction and disruptive after her termination (doc. 104 at 5, 16–18, 22–23). To plausibly allege a claim for hostile work environment under Title VII, a plaintiff must allege that (1) she "experienced unwelcome harassment"; (2) the harassment was based on her protected class; (3) "the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive atmosphere"; and (4) "there is some basis for imposing liability on the employer." *Holloway v. Maryland*, 32 F.4th 293, 300 (4th Cir. 2022) (internal

quotation marks and citation omitted).  To satisfy the third element, harassment must be so severe or pervasive to render the workplace hostile from both a subjective and objective standpoint.  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993).  When evaluating whether harassing conduct qualifies as objectively severe or pervasive, the court "must look at all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (internal quotation marks and citation omitted).  "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)" will not amount to severe or pervasive harassment.  *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998).  First, the plaintiff's reliance on being called a disruption and a distraction after her termination cannot form the basis of a hostile work environment claim – because the hostile environment has to be present during the employment and these remarks were made after the plaintiff's employment (and she had no knowledge of them until after filing the instant matter).  Further, the plaintiff's remaining alleged "severe" and "pervasive" incidents (comments by Mr. Taylor, not being included on emails, being excluded from a disciplinary meeting for her employee, and Mr. Fullwood being "defensive" with her) fall far short of the high bar needed to allege severe or pervasive harassment for purposes of a hostile work environment claim.  Indeed, the allegations in the plaintiff's third amended complaint of a hostile work environment are not more than a "laundry-list of her workplace grievances."  *Green v. Sessions*, C/A No. 1:17-cv-01365, 2018 WL 2025299, at *11 (E.D. Va. May 1, 2018), *aff'd sub. nom*, *Green v. Whitaker*, 744 F. App'x 802 (4th Cir. 2018); *see E.E.O.C.*, 521 F.3d at 315 (noting that Title VII only "prohibits an employment atmosphere that is permeated with discriminatory intimidation, ridicule, and insult" and "does not establish a general civility code for the American Workplace" (internal citations and quotation marks

omitted)). As such, the plaintiff's hostile work environment claim is subject to summary dismissal.

### *Unequal Terms and Conditions of Employment Claim*

To state a plausible Title VII unequal terms and conditions of employment claim based upon race and gender, a plaintiff must allege that her employer treated her differently than coworkers who were not her race or gender. 42 U.S.C. § 2000e-2(a)(1). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Here, the plaintiff alleges the following matters in support of her assertion that she was subjected to unequal terms and conditions of employment because she was terminated for abrasive language, inappropriate behavior, and failing to follow her supervisor's instructions, but Caucasian male employees were not fired for committing what she contends were more "egregious offenses" (doc. 104 at 12–14). For example, the plaintiff contends that a Caucasian male Shipping Manager, Mr. Lollis, was not fired after being caught drinking on the job, although he was terminated for a safety violation involving a forklift (and rehired when he was not eligible for rehire) (*id*. at 13, 15). She also contends that Mr. Lollis (a Caucasian male) was promoted in 2019 over an existing supervisor named "Buddy" (unknown sex and race) (*id*. at 13). The plaintiff also contends that Mr. Jones (a Caucasian male) was not required to do physical labor that the plaintiff had to take care of – and Mr. Fullwood got defensive when the plaintiff questioned whether Mr. Jones should engage in physical labor for which the plaintiff was responsible (*id*.). The plaintiff also contends that Mr. Jones' employees delayed her work by "horseplaying", but she was disciplined for "dealing with the consequences" (*id*. at 13–14). However, these examples proffered by the plaintiff do not give rise to a reasonable inference that she was treated differently than coworkers based on her gender or race as required to state a claim. As

11

recently recognized by the Fourth Circuit, a comparator in a Title VII case must be similarly situated in *all* respects. *Cosby v. S.C. Prob., Parole & Pardon Servs*, 93 F.4th 707, 714 (4th Cir. 2024). In *Cosby*, the Fourth Circuit noted that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Id*. (internal quotation marks omitted) (quoting *Lightner v. City of Wilmington*, 545 F.3d 260, 265 (4th Cir. 2008)). Here, although the plaintiff contends that Mr. Lollis and Mr. Jones were subject to the same facility management and human resources policy, they are not proper comparators because they worked in different positions than the plaintiff (even if they ultimately reported to the same individuals in charge of the factory). For example, as alleged by the plaintiff, she was a Shipping Leadman, but Mr. Lollis was a Shipping Manager and Mr. Jones was a Production Supervisor (*see* doc. 104 at 13). Indeed, it appears that Mr. Lollis may have even been the plaintiff's supervisor based on her assertion that she applied for the Shipping Manager position, and did not get the promotion (*id*. at 32). Moreover, in addition to the foregoing, the plaintiff has not alleged that she was terminated or otherwise disciplined for drinking on the job or failing to do certain physical tasks. Further, the plaintiff's passing mention that she was disciplined for "dealing with the consequences" of a delay caused by waiting for Mr. Jones' team to build a single kit whereas Mr. Jones was not disciplined also fails to allege disparate treatment. Indeed, the plaintiff has alleged that she was disciplined for her *response* to actions by Mr. Jones' team, not that the delay in and of itself was imputed to her instead of Mr. Jones because of her race and gender. As such, the plaintiff's third amended complaint fails to state a race or gender Title VII discrimination claim based upon unequal terms and conditions of employment.

### Failure to Promote Claim

The plaintiff alleges that she was denied promotions and pay raises because of her race and gender (doc. 104 at 32). To plausibly state a claim for failure to promote under Title VII, a plaintiff must allege sufficient factual allegations to show that she was

denied a promotion under circumstances giving rise to an inference of discrimination. *Williams v. Giant Food, Inc*., 370 F.3d 423, 430 (4th Cir. 2004) (citation omitted). Here, the plaintiff alleges three specific failure to promote claims: (1) that when she applied for the Shipping Manager position in April 2023, a less-qualified Caucasian male employee (Mr. Stafford) was hired for the position (*id*.); (2) that in 2019 Mr. Lollis (a Caucasian male) employee was promoted to Shipping Manager over an existing supervisor named Buddy (*id*.); and (3) that after her termination, the plaintiff was replaced by a Caucasian male (*id*.). Here, only the first of the three claims is sufficient to survive screening, and the plaintiff's failure to promote claim based on her application for the Shipping Manager position in 2023 will be recommended for service. The remaining claims noted above, do not involve the plaintiff being denied a promotion based on her race or gender; thus, they cannot form the basis of additional failure to promote causes of action. *See e.g.*, *Barcliff v. N.C. League of Munis.*, C/A No. 5:10-cv-244-D, 2011 WL 3290578, at *5 (E.D.N.C. Aug. 1, 2011) (dismissing failure to promote claims because the plaintiff's complaint did not "plausibly allege why she was qualified for the promotions, why an inference of race discrimination exists concerning her non-selection, or why the selected applicants were less or equally qualified"). Accordingly, the plaintiff's claim regarding failure to promote will only be served with respect to her April 2023 application for the Shipping Manager position (with the remainder of her failure to promote claims subject to dismissal).

### Retaliation Claim

As outlined above, the plaintiff asserts five different causes of action for retaliation – but her allegations are all based on the same limited factual allegations that she was terminated in retaliation for engaging in protected activity (*see* doc. 104 at 5, 9–11, 14–16, 20–21, 26–27, 30–31). Under Title VII, an employer is forbidden from taking action that discriminates against an employee because that employee has either "opposed any practice made an unlawful employment practice by this subchapter" or has "made a charge,

13

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The purpose of this anti-retaliation provision is to prevent "an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's most basic guarantees." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63 (2006). To state a plausible retaliation claim under Title VII, "[a] complaint [must] contain[] sufficient factual matter, accepted as true, to state a claim to relief that is *plausible* on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *McCleary-Evans v. Md. Dep't of Transp.*, 780 F.3d 582, 585 (4th Cir. 2015) (citations and internal quotation marks omitted) (some alterations in original). Importantly, a plaintiff must plausibly allege that *but for* the protected activity, she would not have experienced the alleged adverse act. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013) (noting that a plaintiff making "a retaliation claim under § 2000e-3(a) must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer.").

Here, the plaintiff alleges that she engaged in protected activity when she complained that she was exposed to unsafe working conditions; when she informed human resources on February 14, 2024, that she was going to file a complaint with the EEOC regarding discrimination she experienced while working for the defendant; and when she informed management on February 26, 2024, that a proposed policy sent by Mr. Stafford was unlawful (*id.* at 5, 10, 15, 20–21, 26–27, 31). "Protected activity" under Title VII falls into one of two categories: opposition or participation. *Crawford v. Metro. Gov't of Nashville & Davidson Cnty.*, 555 U.S. 271, 274 (2009) (citing 42 U.S.C. § 2000e-3(a)). "Employees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 281 (4th Cir. 2015) (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.*, 333 F.3d 536,

14

543–44 (4th Cir.2003)).  Here, the only activity engaged in by the plaintiff that is covered under the statute is when she notified human resources that she intended to file an EEOC complaint about discrimination she was subjected to while working for the defendant; the plaintiff's remaining complaints about unsafe working conditions and an alleged illegal policy are not protected activity because she has not alleged that the complaints were tied to a protected class (instead they involved alleged unsafe working conditions and an alleged illegal policy) (*see* doc. 104 at 5, 10, 15, 20–21, 26–27, 31).  *See Cosby v. S.C. Probation, Parole & Pardon Servs.*, 93 F.4th 707, 719 (4th Cir. 2024) (noting that "'complaining in general terms of discrimination or harassment, without indicating a connection to a protected class or providing facts sufficient to create that inference, is insufficient' to constitute protected activity under Title VII." (quoting *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 718 (7th Cir. 2018)).  Further, failure by an employer to investigate claims of discrimination is not an adverse action for purposes of a retaliation claim.  *See Foust v. Duke Univ.*, C/A No. 1:24-cv-01100, 2025 WL 786580, at *4 (M.D.N.C. Mar. 12, 2025) (internal citations omitted).

As such, there is only one incident of engagement in protected activity under which the plaintiff may pursue her retaliation claim – when she complained to human resources that she would be filing an EEOC complaint about workplace harassment and was terminated two weeks later.  Based on the foregoing, the undersigned finds that this discrete retaliation claim survives screening and should be served.  The remainder of the plaintiff's attempted retaliation claims – all relying on the same facts repeated throughout the complaint – are subject to dismissal.

**Occupational Safety & Health Administration ("OSHA") Claim**

The plaintiff contends in her third amended complaint that she does not seek relief under OSHA (*see* doc. 104 at 23).  Nevertheless, even construing her third amendment complaint as raising an OSHA claim because she was terminated after reporting unsafe working conditions (and sustaining a workplace injury), the plaintiff's claim fails.

15

Relevant to the instant matter, OSHA prohibits retaliation against employees who exercise their rights under the statute.  29 U.S.C. § 660.  Specifically, § 11(c) provides that "[n]o person shall discharge or in any manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this" Act.  *Id*. § 660(c)(1).  However, the Fourth Circuit has held that § 11(c) does not provide a private right of action through which an individual can sue his or her employer.  *See Scarborough v. Aegis Commc'ns Grp., Inc.*, 217 F.3d 840 (Table), 2000 WL 790965, (4th Cir. 2000) (unpublished per curiam opinion) (noting that there is no private right of action under OSHA); *see also Carter v. GardaWorld Sec. Servs.*, C/A No. JKB-20-3700, 2021 WL 2018636, at *5 (D. Md. May 20, 2021) (dismissing, amongst other things, an OSHA retaliation claim because there was no private right of action for an OSHA retaliation claim).  As such, to the extent an OSHA claim could be construed from the plaintiff's third amended complaint, it is subject to summary dismissal.

**South Carolina State Law Claims**

### South Carolina Human Affairs Law

The plaintiff also alleges that her termination violated the South Carolina Human Affairs Law (doc. 104 at 18–20).  In South Carolina, "employment at-will is presumed absent the creation of a specific contract of employment."  *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 636 (S.C. 2011).  An at-will employee may be terminated at any time for any reason or for no reason, with or without cause.  *Id*. Under the "public policy exception" to the at-will employment doctrine, however, an at-will employee has a cause of action in tort for wrongful termination where there is a retaliatory termination of the at-will employee in violation of a clear mandate of public policy.  *Ludwick v. This Minute of Carolina, Inc.*, 337 S.E.2d 213 (1985). The public policy exception clearly applies in cases where either:  (1) the employer requires the employee to violate the law or (2) the reason for the employee's termination itself is a violation of criminal law.  *Id*. at 224–25; *Culler v. Blue Ridge Elec.*

16

*Co-op., Inc.*, 422 S.E.2d 91, 92 (S.C. 1992). Here, the plaintiff has not alleged a contractual employment agreement with her employer; thus, she may only bring a claim under South Carolina law if the public policy exception applies. Here, the plaintiff's third amended complaint alleges that an email from Kyle Stafford regarding changing shipping date information in the system for customers required her to violate Federal Shipping Laws and that she was terminated because she complained about the illegal policy (doc. 104 at 18–20). The plaintiff's claim fails for two reasons. One, the plaintiff concedes that a discussion happened with management over the legality of the requested policy change and it was determined not to be a violation of law (*id*. at 19). Further, the regulations cited by the plaintiff do not include any requirements regarding shipping dates. *See* 49 C.F.R. § 373.101 (noting that bills of lading requires names of cosignor and cosignee; origin and destination; number of packages; description of freight; and weight, volume, or measurement of the freight – with no note regarding shipping dates); 49 C.F.R. § 395.8 (noting requirements for driver's record of duty status so too many hours are not worked – with no note regarding shipping dates of packages). Further, because the above regulations do not apply or hold illegal the shipping date change challenged by the plaintiff, her reference to a federal criminal statute regarding making false statements also fails to provide a basis for the application of the public policy exception to her termination. Moreover, aside from the foregoing, the plaintiff has other statutory remedies for her alleged wrongful termination – including Title VII; thus, her state law claim for termination in violation of public policy is subject to dismissal because the public policy exception does not apply in cases where there is an existing statutory remedy. *Barron v. Labor Finders of S.C.*, 713 S.E.2d 634, 637 (S.C. 2011). Accordingly, the plaintiff's wrongful termination claim under state law is subject to summary dismissal.

### *Workers' Compensation & Negligent Supervision & Retention Claims*

To the extent the plaintiff's third amended complaint could be construed as seeking any relief with respect to her pending worker's compensation claim (or any claims that the plaintiff was denied proper medical treatment after her injury) or that the defendant negligently supervised and retained employees that it knew were discriminating against the plaintiff based on her race and gender (doc. 104 at 5, 24–26), her claims are subject to dismissal. The South Carolina Workers' Compensation Act ("SCWCA") provides that "[e]very employer and employee . . . shall be presumed to have accepted the provisions of the [Act] respectively to pay and accept compensation for personal injury . . . arising out of and in the course of the employment and shall be bound thereby." S.C. Code § 42-1-310. A "personal injury" is "an injury by accident arising out of and in the course of employment." S.C. Code Ann. § 42-1-160(A). The SCWCA, however, provides that a claim brought before the Workers' Compensation Commission is the exclusive remedy against an employer for an employee who sustains injuries arising out of her employment. *Sabb v. S.C. State Univ.*, 567 S.E.2d 231, 234 (S.C. 2002). This includes claims for negligent supervision or retention. *Id.*; *see Dewese v. Sci. Applications Int'l Corp.*, C/A No. 2:11-cv-03024-DCN-BHH, 2012 WL 1902264, at *3 (D.S.C. May 2, 2012), *Report and Recommendation adopted as modified on other grounds by* 2012 WL 1909353 (D.S.C. May 25, 2012). Accordingly, based on the exclusivity provision in the SCWCA, any claims arising out of the plaintiff's workplace injury and her open workers' compensation claim as well as her negligent supervision and retention claims cannot be pursued in this action and are subject to dismissal.

### *Intentional Infliction of Emotional Distress Claim*

The plaintiff also seeks damages for IIED (doc. 104 at 29–30). The plaintiff alleges that she was subject to "extreme" retaliatory conduct meant to humiliate her because she was called a "distraction", she was terminated, and another employee said the plaintiff

18

could not do her job effectively (*id*.). IIED "claims require a showing of conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Steele v. Capital One Home Loans, LLC*, C/A No. 3:13-CV-704-RJC-DSC, 2014 WL 3748928, at *4 (W.D.N.C. July 30, 2014) (internal citation and quotation marks omitted), *aff'd*, 594 F. App'x 215 (4th Cir. 2015). "[T]he court plays a significant gatekeeping role to prevent claims for intentional infliction of emotional distress from becoming a panacea for wounded feelings rather than reprehensible conduct." *Wall v. Enter. Leasing Co. – Se., LLC*, C/A No. 3:18-1225-TLW-SVH, 2019 WL 4935631, at *2 (D.S.C. Jan. 30, 2019) (citation and internal quotation marks omitted), *Report and Recommendation adopted by* 2019 WL 4931316 (D.S.C. Oct. 4, 2019). Here, the plaintiff's allegations fall far short of the "extreme" and "outrageous" standard required to state an IIED claim. Indeed, as outlined above with respect to the plaintiff's hostile work environment claim, her allegations of sporadic discriminatory remarks (as well as remarks she was not aware of until after her termination) cannot rise to the level required for an IIED claim (or a hostile work environment claim as outlined, *supra*). As such, the plaintiff's IIED claim is also subject to summary dismissal.

### Defamation Claim

The plaintiff also alleges defamation by the defendant based on negative comments about her work performance that were distributed to other employees (doc. 104 at 27–28). "[T]he tort of defamation allows a plaintiff to recover for injury to [her] reputation as the result of the defendant's communication to others of a false message about the plaintiff." *Holtzscheiter v. Thomson Newspapers, Inc.*, 506 S.E.2d 497, 501 (S.C. 1998). Defamatory communications take two forms: libel and slander. *Id*. "Slander is a spoken defamation while libel is a written defamation or one accomplished by actions or conduct." *Id*. (internal citation omitted). To state a claim for defamation, a plaintiff must allege that (1)

19

a false and defamatory statement was made; (2) the unprivileged publication was made to a third party; (3) the publisher was at fault; and (4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. *Erickson v. Jones St. Publishers, LLC*, 629 S.E.2d 653, 664 (S.C. 2006).

Here, the plaintiff has failed to state a claim for defamation against the defendant. First, the plaintiff has alleged only one specific statement in support of her assertion that the defendant defamed her – that Jeff Fullwood's internal emails indicated that she was terminated because she was a distraction to the business (doc. 104 at 28). The remaining allegations of defamatory statements are just conclusory assertions by the plaintiff that Corey Anderson "affirmed" that narrative and that Kyle Stafford portrayed the plaintiff as hostile (*id*.). The plaintiff's defamation claim also fails because she has not alleged that the statements were made to third parties – instead asserting that the statements were shared with other individuals in management at the company – and the plaintiff's passing assertion that individuals beyond management were sent the defamatory statements is insufficient to plausibly allege dissemination of the alleged defamatory statements to a third party to support a defamation claim (*id*.). Additionally, the plaintiff has not plausibly alleged harm as a result of the dissemination of these statements to other employees working for the defendant – only asserting in passing that the statements have harmed her "job-seeking prospects." *Griffith v. State Farm Fire and Cas. Co.*, C/A No. 2:12-cv-00239-DCN, 2012 WL 2048200, at *1 (D.S.C. June 6, 2012) (finding that the plausibility standard requires more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" (quoting *Iqbal*, 556 U.S. at 678)). Thus, the plaintiff's defamation claim is also subject to summary dismissal for failure to state a claim upon which relief can be granted.

## RECOMMENDATION

As noted herein, this case will go forward with respect to the plaintiff's Title VII failure to promote and retaliation claims (as specifically identified above). However, with

respect to the plaintiff's remaining claims, they are still subject to dismissal. As such, the undersigned recommends that the district court dismiss the remaining claims *with* prejudice (other than the Title VII failure to promote and retaliation claims), without leave for further amendment, and without issuance and service of process. *See Britt v. DeJoy*, 49 F.4th 790 (4th Cir. 2022) (published) (noting that "when a district court dismisses a complaint or all claims without providing leave to amend . . . the order dismissing the complaint is final and appealable"). **The attention of the parties is directed to the important notice on the next page.**

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

May 15, 2025
Greenville, South Carolina

21

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committees note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).