IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Sandra M. Holliday,                 )<br>                  )<br>         Plaintiff,    )<br>                  )<br>vs.                  )<br>                  )<br>Pratt Industries, Inc.,      )<br>                  )<br>        Defendant.   )<br>                  ) | Civil Action No. 6:24-cv-5122-BHH-KFM<br><br>**REPORT OF MAGISTRATE JUDGE** |

This matter is before the court on the defendant's motion for summary judgment (doc. 191) and the plaintiff's motion for relief regarding court-ordered mediation (doc. 182).  The plaintiff is proceeding *pro se* in this matter.  Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases involving *pro se* litigants and submit findings and recommendations to the district judge.

## I. BACKGROUND

The plaintiff filed her initial complaint in this court on September 26, 2024 (doc. 7).  Upon initial review of the plaintiff's complaint, the undersigned issued an order informing the plaintiff that her claims – except for her retaliation claim under Title VII of the Civil Rights Act of 1964 ("Title VII") – were subject to summary dismissal (doc. 21 at 8).  The plaintiff filed an amended complaint that only cured the identified defects with her Title VII failure to promote claim (doc. 23).  Accordingly, the undersigned issued an order authorizing service of the plaintiff's Title VII failure to promote and retaliation claims and a report and recommendation recommending that the plaintiff's remaining claims be dismissed (docs. 26, 28).  Because the plaintiff provided additional documents with her objections and out of an abundance of caution at the pleading stage, the Honorable Bruce Howe Hendricks,

United States District Judge, declined to adopt the report and recommitted the case to the undersigned for further consideration (doc. 89). On April 10, 2025, the undersigned stayed all deadlines in the scheduling order and directed the plaintiff to file a third amended complaint by April 24, 2025, listing all allegations and claims she wished to present in this action (doc. 94).

On April 25, 2025, the plaintiff filed her third amended complaint (doc. 104). After initial review of the plaintiff's third amended complaint, the undersigned issued an order authorizing service of the plaintiff's Title VII claims for (1) failure to promote with regard to the shipping manager position for which plaintiff was not hired in April 2023 and (2) retaliation with respect to her February 2024 complaint of gender and race discrimination and her subsequent termination. A report and recommendation was also made recommending that the plaintiff's remaining claims be dismissed (docs. 110, 112). On June 9, 2025, Judge Hendricks adopted the report and recommendation, leaving only the plaintiff's Title VII failure to promote and retaliation claims pending in this action (doc. 134).

In her third amended complaint, the plaintiff, who is an African-American woman, contends that she was employed by the defendant as a shipping leadman from October 2018 to February 2024 (doc. 104 at 5). The plaintiff alleges that she was denied promotions and compensation opportunities in favor of Caucasian male employees, including for the shipping manager position in April 2023 (*id.* at 5, 32).

The plaintiff also states that on February 14, 2024, she informed the human resources manager that she was going to file a charge with the Equal Employment Opportunity Commission ("EEOC") regarding discrimination she experienced while working for the defendant (*id.* at 5, 10, 15, 31). The plaintiff alleges that she received a final written warning for her first disciplinary action that same day (*id.* at 10, 15, 26). The plaintiff contends that she was retaliated against because she was terminated on February 27, 2024, and referred to as a distraction (*id.* at 5, 10–11, 15–16, 20–21, 26–27, 30–31). The

2

plaintiff filed a charge with the EEOC on May 20, 2024, and she received her right to sue letter on June 27, 2024 (*id.* at 5).

On January 2, 2026, the defendant filed a motion for summary judgment (doc. 191). On January 5, 2026, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if she failed to respond adequately to the defendant's motion (doc. 192). The plaintiff filed a response to the motion for summary judgment on February 5, 2026 (doc. 194), and the defendant filed a reply on February 12, 2026 (doc. 195). Accordingly, this motion is ripe for review.

## II. FACTS PRESENTED

On October 8, 2018, the plaintiff began working part-time with the defendant through a staffing agency (doc. 191-2 at 2, Holliday dep. 11:11–19). On July 1, 2019, the defendant directly hired the plaintiff as a full-time employee (*id.* at 3, 16:3–20). On August 13, 2019, the defendant's general manager, Jeff Fullwood, promoted the plaintiff to shipping clerk (doc. 191-4 at 2, Fullwood decl. ¶ 3).

On July 7, 2023, the plaintiff applied for the shipping manager position (doc. 191-2 at 10, Holliday dep. 78:8–14). Seventeen candidates applied for the position, and six candidates – including the plaintiff – were interviewed (doc. 191-4 at 2–3, Fullwood decl. ¶ 6). Fullwood attested that an external Caucasian male candidate, Kyle Stafford, was the most qualified for the position because "of his extensive supervisory experience and interview performance" (*id.* at 3, ¶ 9). The defendant hired Stafford for the shipping manager position on August 28, 2023 (doc. 191-7 at 3, Stafford decl. ¶ 6). Fullwood offered the plaintiff another role in the accounting department with increased pay, but the plaintiff declined this offer (doc. 191-4 at 4, Fullwood decl. ¶ 13).

As the shipping manager, Stafford was the plaintiff's manager (doc. 194–13 at 1, Holliday decl. ¶ 2; doc. 194-10 at 4, Holliday dep. 50:8–10, 53:1–12).[1] Mr. Stafford attested that the plaintiff "demonstrated unprofessional and demeaning behavior towards [him]" including referring to him as "incompetent" multiple times; ignoring his phone calls or hanging up on him; and responding to Stafford's in-person addresses with "unseemly responses" or by ignoring him altogether (doc. 191-7 at 3, Stafford decl. ¶ 8). The plaintiff attested that she did not answer phone calls because the defendant did not give her a company phone and she could not use her phone when operating a forklift (doc. 194-8 at 1–2, Holliday decl. ¶¶ 2, 4, 8). She did admit that she told Stafford that he was "incompetent" (doc. 191-2 at 17–18, Holliday dep. 141:1–11, 150:19–25).[2] Stafford attested that the plaintiff was a "strong performer but her behavior was unprofessional . . . and negatively impacted the team's productivity" (doc. 191-7 at 3, Stafford decl. ¶ 10). On February 14, 2024, the human resources manager issued the plaintiff a written final warning for her "display of disrespectful behavior toward her manager, Kyle Stafford" (doc. 194-6 at 3–4).[3] The final warning stated that her timetable for improvement was "[i]mmediate" and failure to improve could result in "[d]iscipline up to and including discharge" (id. at 4).

Later that day, the plaintiff emailed the human resources manager complaining about Stafford lying to the plaintiff and a lack of respect toward her (doc. 191-3 at 89). She closed her email by saying that Mr. Stafford "lies and manipulates every

---

[1] The plaintiff claims the defendant's computer system did not show Stafford as her "supervisor" (doc. 194–13 at 4, Holliday decl. ¶ 21), but she attested that she reported to him and testified that he was her "manager" since the defendant hired him (id. at 1, ¶ 2; doc. 194-10 at 4, Holliday dep. 50:8–10, 53:1–12).

[2] The plaintiff first testified that the incident was in December 2023 but was later asked if she called Stafford incompetent in January 2024 (see doc. 191-2 at 17–18, Holliday dep. 141:1–11, 150:19–25). Neither party filed the next page containing the plaintiff's answer. It is unclear if these were separate incidents or one continuous incident.

[3] The final warning was issued to a "Sandra Robinson" (doc. 194-6 at 3), but this appears to be a scrivener's error referring to the plaintiff.

situation . . . and at this point [the plaintiff] believe[s] the EEOC would be the only objective unbiased entity to look into the situations at Pratt" (*id.*).  In response to the plaintiff's email, Fullwood told the human resources manager that "this is the very reason we wanted to terminate [the plaintiff] in the first place" and questioned why the defendant continued to employ her after "telling [them] that she will be quitting soon and threatening to file a complaint with the EEOC" (doc. 194-21 at 2).  On February 16, 2024, the plaintiff further complained that "there are a multitude of people that work at Pratt Greenville [who] feel that racism, favoritism, sexism, bullying, [and] retaliation exist and is tolerated" and that an unnamed "black hourly employee" was treated differently than a white "manager" was treated for the same violation of company policy (doc. 191-3 at 88).

On February 23, 2024, the plaintiff forwarded an email from Stafford to one of her co-workers through the defendant's email network with her added message, "Ignorance at its finest" (doc. 194-7 at 1–2).  On February 26, 2024, Stafford gave the human resources manager a copy of his email with the plaintiff's added message (doc. 191-5 at 5, Anderson decl. ¶ 16).  On February 27, 2024, the defendant terminated the plaintiff's employment with the stated reasons being her refusal to follow instruction and violation of rules (doc. 194-6 at 5–6).[4]  Her written termination notice referenced the February 23, 2024 email and her February 14, 2024 final warning for "Disrespectful Behavior" (*id.* at 6).

As part of her employment, the plaintiff received a copy of the defendant's handbook, which prohibits employees from, *inter alia*, "engag[ing] in insubordination in relation to job duties" (doc. 191-2 at 4, Holliday dep. 22:5–18; doc. 191-3 at 43).  It also states that insubordination "may lead to disciplinary action, up to and including termination

---

[4] The written termination lists both "Sandra Holliday" and "Sandra Robinson" (doc. 194-6 at 5–6).  Like with her final warning, the reference to "Sandra Robinson" appears to be a scrivener's error.

without prior warning" (doc. 191-3 at 40, 43). The plaintiff testified that she reviewed the handbook "[o]ften" (doc. 191-2 at 4, Holliday dep. 22:19–24).

### III. APPLICABLE LAW AND ANALYSIS

#### A.    *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**B.    Title VII**

Title VII makes it "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex . . . ." 42 U.S.C. § 2000e–2(a)(1). The plaintiff's remaining Title VII claims are based on failure to promote and retaliation theories (docs. 112, 134).

**1.    Failure to Promote**

The defendant argues that the plaintiff cannot establish a prima facie case for failure to promote (doc. 191-1 at 11–15), which requires that a plaintiff show: "(1) she is a member of a protected group, (2) there was a specific position for which she applied, (3) she was qualified for that position, and (4) [her employer] rejected her application under circumstances that give rise to an inference of discrimination." *Williams v. Giant Food Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). "If the plaintiff makes such a showing, the defendant must respond with evidence that it acted on a legitimate, non-discriminatory basis." *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 341 (4th Cir. 2008). "If the defendant does so, the plaintiff is then obligated to present evidence to prove that the defendant's articulated reasons were pretext for unlawful discrimination." *Id.*

Here, the defendant concedes that the plaintiff can meet the first three elements of her prima facie failure to promote claim and challenges only the fourth element – circumstances that give rise to an inference of discrimination (doc. 191-1 at 12). In support of this element, the plaintiff argues that two alleged statements from Roger Taylor, the defendants' quality manager, give rise to an inference of discrimination (doc. 194 at 7–8). First, the plaintiff claims that Taylor said, "[The plaintiff] being a black woman will

never admit she can't do the job of a Shipping Manager" (doc. 194 at 5). Taylor denies ever making this statement (doc. 191-6 at 3, Taylor decl. ¶ 9). In an attempt to substantiate this statement, the plaintiff provided a declaration from Melissa Zidaroff, who was previously employed by the defendant and attested that in April 2023 she was informed by a co-worker, Logan Finley, that Taylor made this statement (doc. 194-2 at 1, Zidaroff decl. ¶ 3).

In its reply, the defendant argues that the alleged comment is hearsay within hearsay (doc. 195 a 6-9). Hearsay is "a statement that . . . the declarant does not make while testifying at the current trial or hearing [that is offered] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Hearsay is inadmissible, absent a rule of evidence or other statute or rule that renders it admissible. Fed. R. Evid. 802. At the summary judgment stage, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

The plaintiff argues that this statement is not hearsay because it qualifies as a statement by a party-opponent (doc. 194 at 7–8) (citing Fed. R. Evid. 801(d)(2)(D)). Rule 801(d)(2)(D) provides that a statement is not hearsay if "[t]he statement is offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." Fed. R. Evid. 801(d)(2)(D). The agent "need not have authority to make the statement at issue, but rather the subject of the statement must relate to the employee's area of authority." *United States v. Brothers Constr. Co. of Ohio*, 219 F.3d 300, 311 (4th Cir. 2000). "[I]n the context of a Title VII employment discrimination case, FRE 801(d)(2)(D) requires the statement's proponent to demonstrate that the scope of the declarant's authority included matters related to the employment action at issue." *Parker v. Danzig*, 181 F. Supp. 2d 584, 592 (E.D. Va. 2001).

Here, as argued by the defendant, the plaintiff must prove that each part of the two statements falls within an exception to the rule against hearsay (doc. 195 at 6); *see*

8

*Cain v. Providence Hosp., LLC*, C.A. No. 3:18-cv-2120-JFA-SVH, 2020 WL 1149724, at *9 (D.S.C. Mar. 10, 2020) ("To be admissible, both statements must constitute a hearsay exception or exclusion.") (citing Fed. R. Evid. 805).  The first alleged statement from Taylor to Finley would qualify as a statement of a party opponent and is excluded from the rule against hearsay.  Taylor was the defendant's employee and part of the shipping manager interview team (doc. 191-6 at 3, Taylor decl. ¶ 6).  Accordingly, this alleged statement about the plaintiff's qualifications for the shipping manager position was within the scope of Taylor's employment relationship with the defendant.

However, the plaintiff has failed to show that the statement from Finley to Zidaroff is excluded or excepted from the rule against hearsay.  Finley denies ever hearing this statement and attested that he was employed as an inventory cycle counter at the time at issue (doc.195-1 at 2, Finley decl. ¶¶ 2, 5).  There is no evidence that he was involved in the shipping manager interview process or otherwise had any authority to hire or promote anyone.  The plaintiff also has not provided any evidence showing that the qualifications for the shipping manager position were within Finley's scope of authority.  The plaintiff has not argued that this statement falls under any other hearsay exclusion or exception.  As such, this alleged statement cannot be considered as evidence.

Next, the plaintiff argues in response to the motion for summary judgment that Taylor's "personal bias, not merit-based selection" is reflected in his statement to both the plaintiff and Zidaroff that "what impressed [Taylor] most about Stafford during the interview process was that Stafford was 'a girl dad'" (doc. 194 at 8).  However, the plaintiff provided no evidence that Taylor ever made this statement.  Accordingly, the plaintiff has failed to show circumstances giving rise to an inference of discrimination and does not establish a prima facie case for failure to promote.

Even if the plaintiff could establish a prima facie case for failure to promote, the defendant provided a legitimate, non-discriminatory reason for selecting Stafford for the

shipping manager position – his "extensive supervisory experience" and superior interview performance (doc. 191-4 at 3–4, Fullwood decl. ¶¶ 9, 10, 12).  At this stage, the defendant bears only a burden of production, not of persuasion.  *Westmoreland v. TWC Admin. LLC*, 924 F.3d 718, 725 (4th Cir. 2019).  The defendants' proffered reasons are sufficient to satisfy its burden of production.  *See Williams v. Henderson*, 129 F. App'x 806, 814–15 (4th Cir. 2005) (finding that the employer provided a legitimate reason, thereby satisfying its burden of production, for not hiring an African-American applicant because "the white employee performed better during his interview"); *Lusby v. Savannah River Nuclear Sols., LLC*, C.A. No. 1:20-cv-1165-SAL-PJG, 2022 WL 1057169, at *4 (D.S.C. Jan. 5, 2022) ("Moreover, the undisputed evidence in the record shows that the person selected for the position performed better in his interview than [plaintiff]."), *R&R adopted by* 2022 WL 897151 (D.S.C. Mar. 28, 2022).

Finally, the plaintiff is unable to show that the defendant's proffered reason was pretextual and she was the victim of discrimination.  "'A plaintiff alleging a failure to promote can prove pretext by showing that [s]he was better qualified, or by amassing circumstantial evidence that otherwise undermines the credibility of the employer's stated reasons.'"  *Barnes v. Charles Cnty. Pub. Schs.*, 747 F. App'x 115, 118 (4th Cir. 2018) (quoting *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 259 (4th Cir. 2006)).  In determining who was more qualified, courts look at the qualifications at the time of the hire or promotion.  *See Ham v. Washington Suburban Sanitary Comm'n*, 158 F. App'x 457, 460 (4th Cir. 2005) (looking at the candidates' qualifications "[a]t the time of the promotion decisions" and "[a]t the time of the hiring decisions").  The plaintiff has not provided any evidence that, at the time Stafford was hired as the shipping manager, the plaintiff was the *more* qualified candidate. In her declaration, the plaintiff only discusses Stafford's performance after his promotion (doc. 194-13 at 2, Holliday decl. ¶¶ 7–10).  During her

10

deposition, the plaintiff was directly asked if she believed that she was more qualified than Stafford for the position, and she responded,

> I believe that I knew the job. I did the job. I didn't spend enough time with [Stafford] on a personal level to know whether he was fully qualified. I only can go by what was demonstrated in front of me. And he didn't – didn't seem to have the knowledge to do the basics of what the job entailed on a daily basis.

(Doc. 191-2 at 16, Holliday dep. 87:14–22). The plaintiff could neither testify that she was more qualified than Stafford nor could she testify about Stafford's qualifications at the time he was hired. Her testimony about what Stafford did after being hired does not show that the plaintiff was more qualified at the time the defendant hired Stafford.

The plaintiff argues that the lack of interview scoring supports an inference of pretext (doc. 194 at 8). However, the Court of Appeals for the Fourth Circuit has held that the failure to record candidates' interview answers does not establish pretext for discrimination in violation of Title VII. *See Williams*, 129 F. App'x at 815 (4th Cir. 2005) ("[The fact that [the interviewer] did not specifically record the candidates' interview answers does not tend to show that he lied about their performances or that he ultimately chose the white candidate over [plaintiff] because of [plaintiff's] race."). While the plaintiff is correct that inconsistent post-hoc explanations for employment decisions may be probative of pretext (*see E.E.O.C. v. Sears Roebuck & Co.*, 243 F.3d 846, 852–53 (4th Cir. 2001)), there is no evidence that the defendant has provided inconsistent explanations for choosing Stafford over the plaintiff. Further, the plaintiff has provided no evidence that the defendant deviated from its standard interview practices in this case by not retaining the interview scores. Thus, the plaintiff has failed to show pretext, and the defendant's motion for summary judgment on the plaintiff's failure to promote claim should be granted.

### 2.    Retaliation

The defendants argue that summary judgment should be granted on the plaintiff's retaliation claim because there is no causal connection between the plaintiff's

protected activity and discharge, and, even if there were, the defendant produced a legitimate, non-retaliatory reason for firing her (doc. 191-1 at 15–19). To show a prima facie case of retaliation under Title VII, a plaintiff must establish that (1) she engaged in protected activity; (2) her employer took adverse action against her; and (3) a causal relationship existed between the protected activity and the adverse employment activity. *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 217 (4th Cir. 2016). Once a plaintiff makes a prima facie showing of a retaliation claim, the burden shifts to the employer to offer a legitimate, nonretaliatory reason for its adverse action. *Barnhill v. Bondi*, 138 F.4th 123, 138 (4th Cir. 2025) (citing *Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 63 (4th Cir. 2023); *Decoster v. Becerra*, 119 F.4th 332, 342-43 (4th Cir. 2024)). If the employer meets this burden, "'the burden then shifts back to the . . . [employee] to prove by a preponderance of the evidence' that the employer's purported reason is pretext for intentional retaliation." *Id.* (quoting *Palmer*, 72 F.4th at 63).

Here, for purposes of its motion for summary judgment, the defendant concedes that the plaintiff engaged in protected activity by referencing the EEOC in an email on February 14, 2024, and she suffered an adverse employment action (doc. 191-1 at 16). However, the defendant argues that the plaintiff has not established a causal connection between her protected activity and adverse employment action.

The plaintiff submits that the temporal proximity of her protected activity to her discharge – thirteen days – shows a causal connection between them (doc. 194 at 4, 13–14). "'[T]emporal proximity between an employer's knowledge of protected activity and an adverse employment action' may establish causation only if it is 'very close.'" *Laurent-Workman v. Wormuth*, 54 F.4th 201, 219 (4th Cir. 2022) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001)). The Fourth Circuit has found that a two-week gap between the known protected activity and adverse action is sufficient to satisfy the causal connection element. *Barnhill*, 138 F.4th at 138–39. Likewise, here, the thirteen-day

gap between the plaintiff's email referencing the EEOC and her discharge satisfies the causation prong. Therefore, the plaintiff has established a prima facie case of retaliation.

However, as discussed above, the defendant stated that it fired the plaintiff because of her disrespectful behavior toward Stafford, and the undersigned finds that the plaintiff has not shown that a reasonable jury could conclude that this reason was pretext for retaliation. Under the plaintiff's Title VII retaliation claim, she must show but-for causation. *See Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 249 (4th Cir. 2015) ("Unlike discrimination plaintiffs, retaliation plaintiffs are limited to traditional principles of but-for causation and must be able to prove that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.") (citation and internal quotation marks omitted). In other words, the plaintiff must show that "*the desire to retaliate* was the but-for cause of the challenged employment action." *Villa v. CavaMezze Grill, LLC*, 858 F.3d 896, 900 (4th Cir. 2017) (citation and internal quotation marks omitted).

Here, the plaintiff admits that she told her manager, Stafford, that he was incompetent (doc. 191-2 at 17–18, Holliday dep. 141:1–11, 150:19–25). The final warning the defendant gave the plaintiff on February 14, 2024, for displaying "disrespectful behavior" toward Stafford provided that her timetable for improvement was "[i]mmediate" and failure to improve could result in "[d]iscipline up to and including discharge" (doc. 194-6 at 3-4). The plaintiff received this final warning from the defendant *before* she mentioned the EEOC in her February 14, 2024 email to a human resources manager (doc. 191-3 at 89). The plaintiff further admits to adding "Ignorance at its finest" to an email from Stafford when she forwarded it to her co-worker just nine days later on February 23, 2024 (doc. 194-10 at 10, Holliday dep. 179:9–18). The defendant cited this incident as a violation of company rules in the plaintiff's February 27, 2024 termination notice (doc. 194-6 at 5–6). While the plaintiff claims that this email was not insubordination because it "was made after [work] hours in

13

a forwarded message to coworker Melissa Zidaroff – not in a direct reply to management" (doc. 194 at 4), the reference to her manager's conduct or his email as "ignorance" in an email to a co-worker is disrespectful, regardless of the time of day when the plaintiff sent it.    Moreover, the defendant's employee handbook expressly prohibits "engag[ing] in insubordination in relation to job duties" (doc. 191-3 at 40, 43).  Although the plaintiff argues that the defendant's stated reasons for her discharge were pretext for retaliation (doc. 194 at 13–14), there is no record evidence that the defendant treated non-complaining employees who engaged in similar conduct less severely.

The plaintiff further argues that the defendant's failure to follow its own progressive discipline policy is evidence of pretext (doc. 194 at 4, 14).  The plaintiff is correct that a company's failure "to follow its own disciplinary policies in firing an employee can also be probative of pretext."  *Wannamaker-Amos v. Purem Novi, Inc.*, 126 F.4th 244, 260 (4th Cir. 2025).  However, the plaintiff provides no evidence of this "Progressive Discipline Policy."[5]  To the contrary, the handbook expressly states that violation of the defendant's basic rules, including insubordination, "may lead to disciplinary action, up to and including termination without prior warning" (doc. 191-3 at 40, 43).

Based on the foregoing, the undersigned finds that the plaintiff has failed to produce evidence from which a reasonable jury could determine that the defendant's desire to retaliate against the plaintiff for her Title VII protected activity was the but-for cause for her termination from employment.  Therefore, the undersigned recommends that the district judge grant the defendant's motion for summary judgment on the plaintiff's retaliation claim.

---

[5] In her rebuttal declaration, the plaintiff refers to the "[d]efendant's failure to follow its Progressive Discipline Policy" and cites "DEF 0068–0772" (doc. 194-13 at 3–4, Holliday decl. ¶¶ 14B, 20).  The undersigned reviewed the defendant's employee handbook DEF 0052–0111 (doc. 191-3 at 5–64) and the portions of the defendant's code of conduct and ethics that were filed (doc. 194-5 at 4–18) but could not find the referenced progressive discipline policy.  Regardless, the handbook clearly states that no prior warning is required before terminating an employee for insubordination (doc. 191-3 at 40, 43).

## IV. CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the defendant's motion for summary judgment (doc. 191) should be granted.  Also pending is the plaintiff's non-dispositive motion regarding court-ordered mediation, wherein the plaintiff alleges "procedural irregularities" with the mediation process (doc. 182).  Should the district judge adopt this recommendation to grant the defendant's motion for summary judgment, the plaintiff's motion will be rendered moot.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

June 5, 2026
Greenville, South Carolina

*The attention of the parties is directed to the important notice on the following page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).